IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ETHANOL CAPITAL MANAGEMENT, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | 4:06CV3176 |
| v. | ) ) ) | |
| DEWEESE BIOFUELS, L.L.C., REPUBLICAN VALLEY ETHANOL, L.L.C., STEVE CLABAUGH, PAMELA MAYNARD, and CLAY RAWHOUSER, | ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS |
| Defendants. | ) ) | |

On August 4, 2006, the plaintiff, Ethanol Capital Management L.L.C. (Ethanol Capital), filed a five-count amended complaint against Defendants DeWeese BioFuels, L.L.C. (DeWeese); Republican Valley Ethanol, L.L.C. (Republican Valley); Clay Rawhouser; Steve Clabaugh; and Pamela Maynard. (See Am. Compl., filing 13.) The defendants have moved to dismiss the amended complaint. (See filing 32.) For the following reasons, I find that the defendants' motion must be denied.

## I.   BACKGROUND

The amended complaint alleges as follows. On April 25, 2006, Gary Schwendiman, who was the Chairman of the Board of Ethanol Capital, met with Defendants Rawhouser, Clabaugh, and Maynard "to discuss the purchase/sale of the assets of DeWeese and Republican Valley." (See Am. Compl., filing 13, ¶ 9.) During the meeting, Rawhouser and Clabaugh represented that they were members and managers of both DeWeese and Republican Valley, and Maynard represented that she was a member of DeWeese. (Id. ¶¶ 10-11.) In addition, "Rawhouser, Clabaugh, and Maynard, together and individually, told Schwendiman that collectively Rawhouser, Clabaugh, and Maynard constituted a majority of the members' interests in DeWeese

and Republican Valley, and that their interests were sufficient to authorize the sale of the assets of DeWeese and Republican Valley." (Id. ¶ 12.)  At the conclusion of the meeting, Clabaugh, Rawhouser, and Schwendiman executed a Memorandum of Understanding (MOU).  (See id. ¶ 14; Am. Compl., filing 13, Ex. A.)  The MOU states:

> MEMORANDUM OF UNDERSTANDING
> FOR THE SALE OF ALL ASSETS OF
> DEWEESE BIOFUELS LLC AND REPUBLICAN VALLEY ETHANOL LLC
>
> This Memorandum of Understanding is made and executed this 25th day of April 2006 by and between DeWeese BioFuels LLC and Republican Valley Ethanol LLC, "sellers", [sic] and Ethanol Capital Management LLC (ECM), "buyers" for the purchase of one hundred percent (100%) of the stock, units and all other assets of the sellers.  Consideration for this purchase shall be the sum of ten million three hundred fifty thousand dollars ($10,350,000.00) payable to the entities herein named as subsequently directed by the sellers.  Payment shall be in cash, unless mutually agreed upon by the parties in a form other than cash.  This Memorandum of Understanding may not be assigned by the seller nor may be assigned by the buyer except to an affiliate of ECM.
>
> Payment of the consideration by the buyer or one of its designated affiliates and the purchase of the seller and its assets by the buyer is subject to and contingent upon the findings by ECM during the hereby agreed upon 90 day due diligence period for ECM to conduct due diligence that begins the date of this agreement.  Buyer may escalate the closing date but it shall terminate on July 25, 2006 at 5:00 p.m. CST.  During the 90 day due diligence period, seller shall not execute any binding agreement with regard to the stock units, or assets of sellers.
>
> Subject to the above paragraph, this Memorandum of Understanding shall be binding upon the parties hereto, their personal representatives and assigns.  In the event the buyer elects to proceed, the seller agrees to complete a definitive

>   agreement consistent with the terms herein and all other instruments necessary to complete the sale.
>
>   Consideration for the execution of this Memorandum of Understanding is the sum of $20.00 receipt of which is hereby acknowledged by the seller.
>
>   All parties hereto agree that this agreement will be held in strict confidentiality by the parties hereto but that the same may be disseminated to lawyers, accountants or others who will be likewise bound by this confidentiality agreement.  Buyers may disclose the same to its investors or potential investors and others who may participate in or have need to know regarding the performance of the due diligence who will in turn be bound by this confidentiality agreement.

(Am. Compl., filing 13, Ex. A.)

Sometime during the ninety-day due diligence period specified in the MOU, Ethanol Capital decided to proceed with the transaction.  (Am. Compl., filing 13, ¶ 16.)  On or about July 19, 2006, Ethanol Capital forwarded drafts of a Bill of Sale and Assignment to DeWeese and Republican Valley.  (See id.)  The parties "made additions, deletions and revisions" to the drafts.  (Id. ¶ 17.)  On July 25, 2006, sometime prior to 5:00 p.m., Ethanol Capital, acting through its affiliate U.S. Ethanol Capital Fund, LLC, executed the Bill of Sale and Assignment and forwarded it to DeWeese and Republican Valley.  (Id. ¶ 18; see also id. ¶ 15; Ex. B.)  However, "Defendants informed [Ethanol Capital] that a vote of the members of DeWeese and Republican Valley on that date resulted in a 100% disapproval of the [MOU] and of the terms of the Bill of Sale and Assignment," and DeWeese and Republican Valley did not execute the Bill of Sale and Assignment.  (Id. ¶¶ 19-20.)

On August 4, 2006, Ethanol Capital filed a five-count amended complaint against DeWeese, Republican Valley, Rawhouser, Clabaugh, and Maynard.  (See generally Am. Compl., filing 13.)  Counts I and II allege that Ethanol Capital is entitled to specific performance of the terms of the MOU by DeWeese and Republican Valley, respectively.  (See id. ¶¶ 21-32.)  Counts III and IV allege that, as an alternative to specific performance, Ethanol Capital is entitled to

damages for breach of contract from DeWeese and Republican Valley, respectively. (See id. ¶¶ 33- 42.) Count V alleges that Ethanol Capital suffered damages due to fraudulent misrepresentations made by Rawhouser, Clabaugh, and Maynard. (See id. ¶¶ 43-53.) The defendants have filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (See filings 32.)[1] My analysis of the motion follows.

## II.   STANDARDS OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(6)

"[A] motion to dismiss a complaint [pursuant to Rule 12(b)(6)] should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In resolving such motions, all well-pleaded allegations in the complaint must be taken as true, and the complaint and "all reasonable inferences arising therefrom" must be construed in favor of the plaintiff. Morton, 793 F.2d at 187.

### B.   Federal Rule of Civil Procedure 9(b)

> Under Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity." Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims," and "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003) (citing Abels v. Farmers Commodities Corp., 259 F.3d 910, 920-21 (8th Cir. 2001)). To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. See, e.g., Corsello, 428 F.3d at 1012; Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002). Put another way, the complaint must identify the "who, what, where, when, and how" of the alleged fraud. Costner, 317 F.3d at 888 (citing Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997)).

---

[1] The defendants also moved to dismiss the plaintiff's claims against Defendant Rawhouser pursuant to Rule 12(b)(5); however, this argument has been withdrawn. (See filing 36.)

United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). Complaints that fail to satisfy the requirements of Rule 9(b) are properly dismissed. Id. at 557.

### III.   ANALYSIS
#### A.   Counts I-IV

The defendants argue that Counts I-IV must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the amended complaint fails to "establish the existence of a[] valid, enforceable contract." (Defs.' Br., filing 33, at 4.) It is true that in actions for specific performance of contracts, "[t]he first requirement is the existence of a valid, legally enforceable contract." Sayer v. Bowley, 503 N.W.2d 166, 169 (Neb. 1993). Similarly, it is axiomatic that a plaintiff cannot recover damages for breach of contract in the absence of a valid contract. See, e.g., id. at 171. As a preliminary matter, however, I must determine whether it is appropriate to resolve the defendants' argument within the framework of a motion to dismiss.

First, motions to dismiss ordinarily must be treated as motions for summary judgment when "matters outside the pleading are presented to and not excluded by the court." Fed. R. Civ. P. 12(b). However, "the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint," without converting the motion to dismiss into a motion for summary judgment. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003). Here, the MOU and the Bill of Sale and Assignment are attached to the complaint and have been incorporated therein by reference. (See Am. Compl., filing 13, ¶¶ 14, 18; Exs. A, B.) Therefore, I shall consider those documents without converting the defendants' motion to dismiss into a motion for summary judgment. However, I shall not consider other documents cited by the parties that have not been incorporated into the complaint. (See, e.g., Pl.'s Br., filing 38, at 9 (citing Dec. of Clay H. Rawhouser, Ex. 101, ¶ 13).)

Second, I note that under Nebraska law, "[w]hether a contract exists is a question of fact," and "except in the clearest of cases, the question [whether the parties intended to contract] is for the finder of fact to resolve." Gerhold Concrete Co., Inc. v. St. Paul Fire and Marine Ins. Co.,

695 N.W.2d 665, 670, 672 (Neb. 2005) (citing Viking Broadcasting Corp. v. Snell Publishing Co., 497 N.W.2d 383 (Neb. 1993)).[2] Judgment as a matter of law may be appropriate, however, when the provisions of the alleged contract are "so cursory, indefinite, and conditional as to fail as a matter of law to establish an objective intent on the part of the parties to be bound thereby." Viking Broadcasting Corp., 497 N.W.2d at 386. See also Solar Motors, Inc. v. First Nat. Bank of Chadron, 545 N.W.2d 714, 720 (Neb. 1996). With this principle in mind, I turn to the defendants' arguments that Counts I-IV must be dismissed because the MOU does not amount to an enforceable contract.

The defendants have put forward a compelling argument that the MOU is unenforceable as a matter of law. In Nebraska, "[f]or a binding contract to result from an offer and acceptance, the minds of the parties must meet at every point; nothing can be left open for future

---

[2] The defendants point out, correctly, that in Diesel Power Equipment, Inc. v. ADDCO, Inc., 377 F.3d 853, 856 (8th Cir. 2004), the Eighth Circuit stated that "the Supreme Court of Nebraska views the existence of a contract as a matter of law," as opposed to a question of fact. See also id. (citing Viking Broadcasting Corp. for the proposition that Nebraska has "reject[ed] a line of cases holding that the parties' intent to be bound was a fact question"). More recently, however, the Eighth Circuit has summarized the relevant Nebraska law as follows:

> "[I]n order to establish an express contract there must be a definite proposal and an unconditional and absolute acceptance thereof." Viking Broad. Corp. v. Snell Publ'g Co., 243 Neb. 92, 497 N.W.2d 383, 386 (1993). Additionally, under Nebraska law, when considering whether the parties intended to be bound by a contract, the evidence "is to be viewed objectively, not subjectively." Id. Except in the clearest of cases, the question of whether the parties intended to contract is a factual one to be resolved by the finder of fact. Gerhold Concrete Co. v. St. Paul Fire and Marine Ins. Co., 269 Neb. 692, 695 N.W.2d 665, 672 (2005). However, "[w]hen the provisions of an alleged contract being sued upon are so cursory, indefinite, and conditional as to fail as a matter of law to establish an objective intent on the part of the parties to be bound thereby, no factual issues exist," Solar Motors, Inc. v. First Nat'l Bank of Chadron, 249 Neb. 758, 545 N.W.2d 714, 720 (1996), and summary judgment is appropriate. See Viking Broad. Corp., 497 N.W.2d at 386; see also Diesel Power Equip., Inc. v. ADDCO, Inc., 377 F.3d 853, 857 (8th Cir.2004).

Conolly v. Clark, 457 F.3d 872, 875 (8th Cir. 2006). It seems to me that Conolly sets forth a clearer and more precise summary of the applicable Nebraska law than Diesel Power.

arrangement." Cimino v. FirsTier Bank, 530 N.W.2d 606, 614 (Neb. 1995) (citing Sayer v. Bowley, 503 N.W.2d 166 (Neb. 1993)). Thus, agreements to enter into contracts in the future are "not binding upon either party unless all terms and conditions are agreed upon and nothing is left to future negotiation." Nebraska Nutrients, Inc. v. Shepherd, 626 N.W.2d 472, 499 (Neb. 2001); see also Conolly v. Clark, 457 F.3d 872, 875 (8th Cir. 2006). The MOU at issue in this case can be read as an agreement to enter into a contract in the future. Indeed, The MOU states, "In the event the buyer elects to proceed, the seller agrees to complete a definitive agreement consistent with the terms herein and all other instruments necessary to complete the sale." (Am. Compl., filing 13, Ex. A (emphasis added).) Furthermore, the amended complaint alleges, in essence, that not all terms and conditions were agreed upon in the MOU and certain terms were left to future negotiation. Specifically, the amended complaint alleges that in July 2006, Ethanol Capital drafted a "Bill of Sale and Assignment for all of the assets of DeWeese and Republican Valley," and that "[t]he parties made additions, deletions and revisions to the drafts of the Bill of Sale and Assignment." (Am. Compl., filing 13, ¶¶ 16-17.) Moreover, the Bill of Sale and Assignment contains several new terms that did not appear in, and cannot be inferred from, the MOU.[3] These new terms strongly suggest that the MOU does not amount to a binding contract.

---

[3] The substantive portion of the MOU spans one page. (See Am. Compl., filing 13, Ex. A.) The Bill of Sale and Assignment spans seven pages, excluding the signature page and an attachment entitled "List of Contracts." (See id. Ex. B.) A comparison between the MOU and the Bill of Sale and Assignment reveals a number of material differences. (Compare Am. Compl., filing 13, Ex. A with id., Ex. B.) First, the transactions described by the MOU and Bill of Sale and Assignment are different in structure. The MOU states that the plaintiff will "purchase of one hundred percent (100%) of the stock, units and all other assets of the sellers." (Am. Compl., filing 13, Ex. A.) Thus, it appears that the transaction was to be structured as a sale of 100% of DeWeese's and Republican Valley's stock–which would require the agreement of all stockholders and would result in the transfer of the ownership of the defendant companies to the plaintiff–along with the assets then held by the defendant companies. In contrast, the Bill of Sale and Assignment describes a sale of assets, not stock (which would leave the ownership of the defendant companies unchanged). (See Defs.' Reply Br., filing 39, at 6-7 (pointing out a number of distinctions between stock/units (or membership interests) sales and asset sales).) Second, the Bill of Sale and Assignment contains a provision that excludes from the sale DeWeese's and Republican Valley's liabilities, with the exception of any outstanding obligations under the contracts listed in an attached exhibit. No such provision appears in the MOU or can be inferred from it. Third, the Bill of Sale and Assignment contains several "representations and

7

See Diesel Power Equipment, Inc. v. ADDCO, Inc., 377 F.3d 853, 857-59 (8th Cir. 2004) ("An informal agreement may be binding [under Nebraska law], despite the parties' intentions to enter a formal agreement at a later time, only if the later, formal agreement contains no new provisions not contained in or inferred from the prior informal agreement."); Hawkins Const. Co. v. Reiman Corp., 511 N.W.2d 113, 116-17 (Neb. 1994) (holding that the appellant's act of sending a draft document containing new terms "serve[d] as a tacit admission that the parties left for future negotiation essential details of their arrangement").

Nevertheless, I am not persuaded that this case is so clear as to warrant a finding as a matter of law that the MOU is not a binding contract. "[U]nder Nebraska law, when considering whether the parties intended to be bound by a contract, the evidence 'is to be viewed objectively . . .'" Conolly v. Clark, 457 F.3d 872, 875 (8th Cir. 2006) (quoting Viking Broadcasting Corp. v. Snell Publishing Co., 497 N.W.2d 383, 386 (Neb. 1993)). Here there is "an objective manifestation of an intent to be bound." Id. at 876. The MOU states,

> Subject to the above paragraph, this Memorandum of Understanding shall be binding upon the parties hereto, their personal representatives and assigns. In the event the buyer elects to proceed, the seller agrees to complete a definitive agreement consistent with the terms herein and all other instruments necessary to complete the sale.

(Am. Compl., filing 13, Ex. A (emphasis added).) The defendants' briefs do not address the implications of this language, and it appears that none of the cases cited by the defendants hold that an agreement containing such language "fail[s] as a matter of law to establish an objective intent on the part of the parties to be bound thereby." Viking Broadcasting Corp., 497 N.W.2d at 386. On the contrary, the Nebraska Supreme Court has stated that "[c]ontract law gives effect to the parties' wishes" when those wishes are expressed openly. Id. (quoting Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc., 870 F.2d 423, 425 (7th Cir. 1989)). In Empro Manufacturing Company, the Seventh Circuit noted specifically that "[p]arties may decide for themselves whether the results of preliminary negotiations bind them, but they do this through their words." Empro Mfg.

---

warranties" that were not mentioned in–and cannot be inferred from–the MOU. Finally, the Bill of Sale and Assignment contains an indemnification provision. Indemnity is not addressed in the MOU, and the Bill of Sale and Assignment's indemnification terms cannot be inferred from the MOU.

8

Co., Inc., 870 F.2d at 425 (citation omitted). In addition, the court's decision to affirm the dismissal of Empro's complaint was based, in part, upon the fact that "[n]either the text nor the structure of the letter [of intent] suggests that it was to be a one-sided commitment, an option in Empro's favor binding only Ball-Co." Id. at 426.  Here, the MOU states that its terms are binding, and the MOU appears to be an attempt to establish a "one-sided commitment" in the plaintiff's favor.  Given the Nebraska Supreme Court's heavy reliance upon Empro, it is not clear that the MOU "fail[s] as a matter of law to establish an objective intent on the part of the parties to be bound thereby." Viking Broadcasting Corp., 497 N.W.2d at 386.

In summary, the MOU has many of the characteristics of the "cursory, indefinite, and conditional" agreements that "fail as a matter of law to establish an objective intent on the part of the parties to be bound thereby." Viking Broadcasting Corp., 497 N.W.2d at 386.  See also Conolly v. Clark, 457 F.3d 872, 875-76 (8th Cir. 2006); Diesel Power Equipment, Inc. v. ADDCO, Inc., 377 F.3d 853, 857-59 (8th Cir. 2004); Nebraska Nutrients, Inc. v. Shepherd, 626 N.W.2d 472, 499 (Neb. 2001); Hawkins Const. Co. v. Raiman Corp., 511 N.W.2d 113, 116-17 (Neb. 1994).  However, because the parties agreed that the MOU would be binding upon them, it is not clear that dismissal is appropriate.  The defendants' motion to dismiss Counts I-IV must therefore be denied.

## B.   Count V

In Count V of the amended complaint, the plaintiff alleges that during the meeting of April 25, 2006, Rawhouser, Clabaugh, and Maynard "jointly and individually" represented to Schwendiman that they "held a majority interest in DeWeese and Republican Valley," and that "as a result of their collective majority interests, they had the power to contract to sell the assets of both DeWeese and Republican Valley." (Am. Compl., filing 13, ¶¶ 44-46.)  It also alleges that Rawhouser, Clabaugh, and Maynard made these statements with knowledge that they were false or "recklessly without knowledge of their truth," and that the "misrepresentations were made with the intent that [Ethanol Capital] would rely" on them. (Id. ¶¶ 47-48.)  Finally, the plaintiff alleges that it suffered specific injuries because of its reliance upon the defendants' representations. (See id. ¶¶ 49-53.)  The defendants argue that Count V must be dismissed because these allegations fail to satisfy the particularity requirement of Federal Rule of Civil

9

Procedure 9(b). I disagree.

The defendants argue first that "the Complaint's allegations about the content of representations . . . [are] sparse." (Defs.' Br., filing 33, at 13.) It is true that the amended complaint does not allege precisely what was said by Rawhouser, Clabaugh, and Maynard at the April 25, 2006, meeting. However, Rule 9(b) does not require that the plaintiff recount the defendants' statements word-for-word. See, e.g., Commercial Property Inv., Inc. v. Quality Inns Intern., Inc., 61 F.3d 639, 645-46 & n.6 (8th Cir. 1995). It seems to me that the amended complaint describes the alleged misrepresentations with sufficient particularity to apprise the defendants of the claims against them "and the factual grounds upon which the claims [are] based." Id. at 646; see also United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (stating that the Rule 9(b) particularity requirement "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations" (citation omitted)).

Next, the defendants argue that the amended complaint fails to identify, with sufficient particularity, the persons who made allegedly fraudulent statements. (See Defs.' Br., filing 33, at 13-14.) Specifically, the defendants claim that it is unclear how Rawhouser's, Clabaugh's, and Maynard's alleged misrepresentations "could be made 'jointly and individually' at the same time." (Id. at 14.) Although I agree that the meaning of the phrase "jointly and individually" is unclear in this context, the amended complaint plainly alleges that Rawhouser, Clabaugh, and Maynard knowingly or recklessly misrepresented their interests in DeWeese and Republican Valley and their authority to sell the assets of those companies. The identity of the people making the alleged misrepresentations is alleged with sufficient particularity to satisfy the requirements of Rule 9(b).

The defendants argue next that Count V must be dismissed because the plaintiff has failed to "set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading." (Defs.' Br., filing 33, at 14 (quoting Asbury Square, L.L.C. v. Amoco Oil Co., 218 F.R.D. 183, 188 (S.D. Iowa 2003)).) I am not persuaded, however, that the plaintiff is required to plead specific facts concerning the defendants' state of mind. Rule 9(b) states that "[m]alice, intent, knowledge, and other condition of mind of a person

10

may be averred generally." Thus, Rule 9(b)'s particularity requirement does not apply to averments concerning the defendants' "condition of mind" in an ordinary fraud case. Instead, as the Eighth Circuit has consistently instructed, the particularity requirement applies to "the circumstances constituting fraud," which "include such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Commercial Property Inv., Inc. v. Quality Inns Intern., Inc., 61 F.3d 639, 644 (8th Cir. 1995) (citation omitted); see also United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006).

      A different rule applies in securities cases. Under the Private Securities Litigation Reform Act (PSLRA), scienter must be pleaded with particularity. In re Navarre Corp. Securities Litig., 299 F.3d 735, 742 (8th Cir. 2002). Even before the enactment of the PSLRA, "some circuits [applied] a special standard in securities cases, requiring pleading of facts that would indicate scienter, rather than the mere conclusion that the defendant acted with scienter," Florida State Bd. of Admin. v. Green Tree Financial Corp., 270 F.3d 645, 654-55 (8th Cir. 2001) (citing Romani v. Shearson, Lehman, Hutton, 929 F.2d 875, 878 (1st Cir. 1991); In re Time Warner Inc. Securities Litig., 9 F.3d 259, 268 (2d Cir. 1993)). Asbury Square, which the defendants cite for the proposition that "the party pleading fraud 'must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading,'" extends the standard used in securities cases to cases of ordinary fraud. See Asbury Square, L.L.C. v. Amoco Oil Co., 218 F.R.D. 183, 188 (S.D. Iowa 2003) (citing Lucia v. Prospect Street High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994); Brown v. North Central F.S. Inc., 987 F. Supp. 1150, 1155 (N.D. Iowa 1997)). I respectfully disagree with this extension, and instead I will adhere to the rule set forth in Rule 9(b) and reaffirmed by the Eighth Circuit: In non-securities fraud cases, "condition of mind" may be averred generally. In re Navarre Corp. Securities Litig., 299 F.3d at 742; Fed. R. Civ. P. 9(b).

      Finally, the defendants argue that Count V simply alleges "that the defendants failed to follow through on alleged promises contained in the MOU," and that "allegations of broken promises" generally are not actionable as fraud. (Defs.' Br., filing 33, at 14 (citing Siouxland Energy and Livestock Coop. v. Gaylor, No. C02-4033-MWB, 2002 WL 31749490 (N.D. Iowa

11

Dec. 9, 2002)).) It may be that broken promises generally are not actionable as fraud. See Federal Finance Co. v. Cass, 235 N.W.2d 579, 581 (Neb. 1931) Here, however, the plaintiff's fraud claim is not based on bald allegations that the defendants broke promises made in the MOU.

The defendants have not persuaded me that the plaintiff has failed to plead fraudulent misrepresentation with particularity, and Count V of the amended complaint will not be dismissed.

**IT IS ORDERED** that the defendants' motion to dismiss the amended complaint, filing 32, is denied.

Dated December 20, 2006.

                                BY THE COURT

                                s/ Warren K. Urbom
                                United States Senior District Judge